UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| HEATHER M. BRENNAN, | Case No. 1:09-cv-245-BLW |
|---|---|
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| QWEST COMMUNICATIONS INTERNATIONAL, INC. and QWEST CORPORATION, | |
| Defendants. | |

Before the Court is Defendants' Motion for Summary Judgment (Dkt. 29). The Court has considered the parties' briefing and oral argument. For the reasons expressed below, the Court will deny the motion in part, and grant in part.

## BACKGROUND

Plaintiff Heather Brennan was employed by Defendant Qwest from June 14, 2006, until she was terminated on December 27, 2007. Brennan's position with Qwest was as a Customer Sales and Service Associate (CSSA). As a CSSA, Brennan answered phone calls from Qwest customers and assisted in customer service issues such as billing, connection problems, and changes to services. According to Qwest, Brennan was terminated for unsatisfactory attendance, including seven different "occurrences" of absenteeism during her year and a half with Qwest. (Defs.' Statement of Facts, Dkt. 29-2,

¶¶ 16, 46.)

Under Qwest's employment policy – the Occupational Employee Performance Plan (OEPP), absenteeism is defined as unexcused time, or time not covered by the Family Medical Leave Act (FMLA), when the employee is away from normally scheduled work time. (OEPP, Dkt. 29-9 at 31.) Absenteeism excludes tardies, which are addressed separately in the OEPP. An employee is not eligible for FMLA coverage until she has been employed with Qwest for at least 12 months, and has worked at least 1250 hours in the previous 12 months. (OEPP, Dkt. 29-9 at 30.) Under the OEPP, if an employee takes leave that is not entirely covered by the FMLA, such leave is lumped together and counted "as one absence occurrence and one day." (Id. at 31.) A single "occurrence" of absenteeism can include multiple days, which are also recorded under the OEPP.

Under the OEPP, five occurrences and/or eight days of absenteeism within 12 working months is considered "unsatisfactory" performance. (Id.) When performance is unsatisfactory, an employee is subject to progressive disciplinary measures that Qwest calls its Corrective Action Process. (Id. at 23.) Qwest asserts that its FMLA policy was "posted on the company intranet and available to all employees." (Defs.' Statement of Facts, Dkt. 29-2, ¶ 3.) Brennan does not deny this, but states that supervisor Jessica Davis "did not advise Brennan of the availability of [FMLA] until a disciplinary meeting on October 23, 2007." (Pl.'s Statement of Facts, Dkt. 38, ¶ 16.)

In November of 2006, about five months after she started working for Qwest,

**MEMORANDUM DECISION AND ORDER - 2**

Brennan was involved in a car accident. (Pl.'s Statement of Facts, Dkt. 38, ¶¶ 1, 3.) As a result of the accident, Brennan suffered injuries, including traumatic brain injury (TBI), that made her unable to work from November 13, 2006 until December 22, 2006. (Id., ¶ 3.) Under the OEPP, because Brennan had not yet worked 12 months or 1250 hours for Qwest, her November and December absence were lumped together and she received one absence occurrence and one day. That occurrence and day were recorded on January 19, 2007.

According to her termination notice, dated December 28, 2007, Brennan was terminated for unsatisfactory attendance which included seven occurrences and 12 days of absences. (Notice, Dkt. 29-11 at 18.) These occurrences are described briefly as follows:

| Occurrence Date | Number of Days | Brennan's Reason for Absence |
| --- | --- | --- |
| 10/13/2006 | 1 | cat died |
| 1/19/2007 | 1 | leave following 11/11/2006 car accident |
| 3/12/2007 | 2 | none given |
| 7/23/2007 | 3 | suffered assault |
| 10/19/2007 | 2 | brain lapse related to car accident |
| 10/25/2007 | 1 | brain lapse related to car accident |
| 12/17/2007 | 2 | food poisoning |

(Notes of Investigatory Meeting, Dkt. 29-11 at 13-15.)

Brennan brought this suit on May 22, 2009, alleging that Qwest violated the FMLA and the Americans with Disabilities Act (ADA), breached the covenant of good

**MEMORANDUM DECISION AND ORDER - 3**

faith and fair dealing, and negligently or intentionally inflicted emotional distress as a result of her termination. Qwest now moves for summary judgment on each of these counts.

## STANDARD OF LAW

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). However, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 4**

2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).  This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).  Statements in a brief, unsupported by the record, cannot be used to create an issue of fact.  *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).  The Circuit "has repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."  *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir.1988).

## ANALYSIS

In her response to this motion, Brennan agrees to dismiss the claim for intentional

**MEMORANDUM DECISION AND ORDER - 5**

– but not negligent – infliction of emotional distress. (Pl.'s Opp'n at 15.) The Court will dismiss the intentional infliction of emotional distress claim.

1.   **Americans With Disabilities Act Claim**

Brennan asserts that Qwest discriminated against her in violation of the ADA when Qwest terminated her employment. To establish a discriminatory discharge claim under the ADA, Brennan must show that (1) she is a disabled person within the meaning of the ADA, (2) she is qualified to perform the essential job functions that the position requires, with or without accommodation, and (3) she was terminated because of her disability. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 988-89 (2007); 42 U.S.C. § 12112(a). On a motion for summary judgment, a prima facie case of discrimination is established where plaintiff demonstrates there are genuine issues of material fact as to each of these elements. *See Snead v. Metropolitan Property & Cas., Ins. Co.*, 237 F.3d 1080, 1088-90 (9th Cir. 2001)(examining claim of discrimination under the ADA). The Ninth Circuit has recognized that "[m]aking a prima facie showing of employment discrimination is not an onerous burden." *Id.* at 1091-92 (recognizing the importance of applying all three parts of the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Where a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to come forward with a non-discriminatory reason for discharge. *Id.* at 1093. The burden then shifts back to the plaintiff to show that the employer's reason for termination was pretext for discrimination. *Id.* To succeed on its motion, Qwest must

show that either: (1) Brennan has not established a prima facie case, or (2) despite adequate showing of a prima facie case, Brennan's has failed to demonstrate material issues of fact as to whether Qwest's stated reason for termination – violation of the absence policy – is pretextual.

### A. *Plaintiff's prima facie case*

Qwest concedes, for purposes of this motion, that Brennan is disabled (due to her TBI), the first element for a prima facie case. However, Qwest argues that Brennan cannot establish the two remaining elements – that she was qualified to perform essential job functions, and that she was terminated because of her disability.

#### (1) *Essential job functions*

According to Qwest, Brennan admits that "the only job she is qualified for is 'home-based.'" (Defs.' Memorandum, Dkt. 29-1 at 14.) The Court finds that Brennan's acknowledgment is more nuanced than as described by Qwest. In her deposition, cited by Qwest, Brennan indicates that she "would be fine" working at home, "without lights on, without noise, no distractions." (Brennan Dep. at 232, Dkt. 29-5 at 24.) Brennan's testimony indicates her preferred working conditions, but is not a clear admission that she is unable to perform the requirements of her position as a CSSA.

Qwest also cites to Brennan's application for disability benefits as an admission that she "cannot work even with accommodations such as a reduced work schedule and other accommodations provided by Qwest." (Defs.' Memorandum, Dkt. 29-1 at 13-14.) Qwest notes that the Social Security Administration (SSA) approved Brennan for Social

**MEMORANDUM DECISION AND ORDER - 7**

Security Disability Insurance (SSDI). However, a claim for SSDI and assertion of an ADA claim "do not inherently conflict to the point where courts should apply a special negative presumption." *Cleveland v. Policy Mgt. Syst. Corp.*, 526 U.S. 795, 802 (1999)(noting that the SSA does not account for the possibility of reasonable accommodations). Brennan's qualification for SSDI does not, by itself, preclude her from pursuing her ADA claim.

The Court here finds that Brennan's application for SSDI is not conclusively an admission that Brennan is unable to perform essential job functions, for purposes of this motion. Brennan's application acknowledges that she was allowed fewer hours, lesser duties, and days off from work. But Brennan asserts that she was able to perform the essential functions of her job, "provided that the necessary accommodations were provided." (Pl. Opp'n, Dkt. 36 at 7.) Brennan contends that she requested necessary accommodations but Qwest did not provide them. Brennan has raised an issue of fact regarding her qualification to work with accommodations. The Court therefore finds that Brennan has met the "essential job functions" element of her prima facie case.

### (2) *Termination because of disability*

Brennan asserts that the evidence supports the final element of her ADA claim, that she was terminated because of a disability. The parties agree that the reason for Brennan's discharge was her absenteeism, in violation of the OEPP attendance policy. But according to Brennan, she violated the attendance policy because of Qwest's failure to reasonably accommodate her disability. If Brennan is correct, her termination,

**MEMORANDUM DECISION AND ORDER - 8**

although explained as dictated by her absenteeism, was actually the result of Qwest's unreasonable failure to accommodate her disability.  Seen in that light, Brennan has sufficiently raised a factual issue concerning the basis for her termination to establish a prima facie case of discrimination.  However, that is not the end of the inquiry on this issue, since the reasonable accommodation issue will need to be re-examined as part of the *McDonnell Douglas* burden-shifting analysis.

Under that paradigm, the burden shifts to Qwest to show that its reason for discharging Brennan was legitimate and non-discriminatory.  Qwest argues that its legitimate and non-discriminatory basis for discharging Brennan was her violation of Qwest's attendance policy.  The question is thus whether Qwest's reason for discharge was mere pretext for discrimination, rendered by Qwest's failure to reasonably accommodate Brennan's disability.

**B.** *Reasonable accommodation*

Where an employee requests a reasonable accommodation, "the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, – F.3d – , 2010 WL 3366256 (9th Cir. 2010)(citation omitted).  Here, Brennan asserts that she requested, but was denied, a reasonable accommodation: a medical restriction to her work hours.  Qwest argues that Brennan's medical request indicated a need for breaks "as needed," but that Brennan never actually requested, nor was she denied, these breaks.

A "reasonable accommodation" is a "modification[] or adjustment[] to the work

**MEMORANDUM DECISION AND ORDER - 9**

environment . . . that enables a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). Whether reasonable accommodations have been provided to an employee claiming disability discrimination is ordinarily a question of fact for a jury. *Fuller v. Frank*, 916 F.2d 558, 562, n. 6 (9th Cir. 1990). But where no reasonable jury could find in favor of the non-moving party, a factual dispute is not "genuine" and summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this case, Brennan asserts that she only violated the OEPP attendance policy because of Qwest's failure to implement medical restrictions to her work hours.

In considering this argument, the Court examines the facts surrounding Brennan's discharge. The OEPP outlines a Corrective Action Process in which employees are given notice of progressive disciplinary action. (Ex. B to Davis Dec., Dkt. 29-9 at 23.) Brennan does not challenge the nature of Qwest's Corrective Action Process, nor does she dispute that she was absent from work for each of the seven "occurrences" identified in her notice of termination. (Ex. M to Davis Dec., Dkt. 29-11 at 20.) Instead, Brennan contends that one or more of the absences on which her discharge was based occurred because Qwest did not grant her requests for medical restrictions.

According to Brennan, she requested medical accommodations on June 1, 2007, that would allow her 10- to 15-minute breaks every two to four hours as needed, and would limit her work hours to no more than eight hours per day and forty days per week. (Ex. E to Nicholson Aff., Dkt. 35-8; Pl.'s Opposition, Dkt. 36 at 5.) Brennan argues that

**MEMORANDUM DECISION AND ORDER - 10**

Qwest did not provide her requested breaks, and often required her to work in excess of her requested limits. (Pl.'s Opposition, Dkt. 36 at 5.) However, in support, Brennan cites only to her requests for restrictions, and documents reflecting that her requests were approved. (Ex. D to Nicholson Aff., Dkt. 35-7, Dkt. 36 at 5.) Brennan further argues that Qwest ignored her need to have one to two days off per month as needed, as suggested by her physician. (Pl.'s Opposition, Dkt. 36 at 5-6.) However, Deposition testimony by supervisor Jessica Davis supports that each of Brennan's medical restrictions was honored starting in January of 2007. (Davis Dec., Dkt. 29-8, ¶¶ 40-44.)

The Court notes that three of the seven absences on which Brennan's discharge was based – on 10/13/06, 1/19/07, and 3/12/07 – occurred before June 1, 2007, when Brennan claims to have requested medical restrictions. Also, Brennan's absence on 7/12/07 was due to an unforeseen assault for which Brennan required medical attention; even if the medical attention she received addressed her TBI, Brennan's absence following the assault would not have been prevented by a limitation on her work hours. Finally, Brennan's 12/17/07 absence was apparently the result of food poisoning. Again, this absence could not have been avoided by provision of work hour limitations. Importantly, Brennan has presented no evidence that she requested "as needed" leave, related to her TBI, for the 7/12/07 or 12/17/07 absences.

Brennan seems to argue that, because she was approved for one to two days off per month "as needed," Qwest should have excused one or two absences each month, whether or not Brennan requested TBI-related leave for such absences. The Court finds

**MEMORANDUM DECISION AND ORDER - 11**

that such accommodation is unreasonable. Qwest cannot reasonably be expected to excuse an absence without a request and explanation from Brennan that the absence was TBI-related.

As set forth above, the non-moving party on a motion for summary judgment has a duty to direct the Court's attention to specific triable facts; the Court need not "comb through the record" to find a reason to deny summary judgment." *Southern California Gas*, 336 F.3d at 889; *Carmen,* 237 F.3d at 1029. In this case, Brennan has failed to persuade the Court there is a genuine issue of material fact that Qwest denied her reasonable medical accommodations as requested.

### C. *Application of the OEPP*

In arguing that her discharge was the result of discrimination, Brennan contends that Qwest failed to adhere to its own guidelines in applying its attendance policy. According to Brennan, if Qwest had correctly applied its attendance policy, she would not have been discharged. Specifically, Brennan asserts that Qwest erroneously considered her absent on two dates: (1) January 19, 2007,when Brennan worked six regular hours and 0.67 hours of overtime and was thus on "paid" status; and (2) October 13, 2006, a date that was outside of her "most recent 12-month period," and thus should not have been counted.

During oral argument, counsel for Qwest explained that Brennan's absence, recorded on January 19, 2007, did not indicate that Brennan was absent on that date, but reflected an absence "occurrence" for leave following her car accident, which was not

**MEMORANDUM DECISION AND ORDER - 12**

covered by FMLA, and could thus not be excused. Brennan has provided no evidence that this explanation is inaccurate.

As to the absence recorded on October 13, 2006, although Qwest's counsel indicated at hearing that this date was not counted, the date was referenced in Brennan's termination notice. (Termination Notice, Dkt. 29-11 at 18.) However, the Court notes that inclusion of this occurrence made no difference to Qwest's decision to discharge Brennan. Under the OEPP, five occurrences and/or eight days of absence within 12 working months is "unsatisfactory." (OEPP, Dkt. 29-9 at 31.) Even excluding the October 13, 2006 absence, Brennan had six occurrences and eleven days of absence within 12 working months, rendering her attendance "unsatisfactory" under the OEPP.

In light of the evidence before the Court, Brennan has failed to show a genuine issue of material fact that Qwest's reason for her discharge – absenteeism – was pretext for discrimination. Accordingly, summary judgment as to Brennan's ADA claim will be granted.

**2.      Family Medical Leave Act Claim**

Under the FMLA, "it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided . . .." 29 U.S.C. § 2615(a)(1). Here, Brennan alleges that Qwest interfered with the exercise of her rights under the FMLA by terminating her after she began taking FMLA leave. To show a FMLA violation, a plaintiff must "prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate

**MEMORANDUM DECISION AND ORDER - 13**

her." *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001); 29 C.F.R. § 825.220(c). Such proof can be by direct or circumstantial evidence, or both. *Id.* To defeat this summary judgment motion, Brennan must show there is a genuine issue of fact whether Qwest considered FMLA-protected absences in its decision to terminate Brennan.

As discussed above, Qwest contends that Brennan was terminated for seven absences that were not protected by the FMLA. These "occurrences" were recorded under the following dates (some occurrences involved multiple days): October 13, 2006; January 19, 2007; March 12, 2007; July 23, 2007; October 19, 2007; October 25, 2007; December 17, 2007. (Defs.' Statement of Facts, Dkt. 29-2 at 7.) According to Qwest, the first four absences occurred before Brennan was eligible for FMLA.

To be eligible under the FMLA, an employee must have been employed for at least 12 months and at least 1,250 hours of service during the prior 12-month period. 29 U.S.C. § 2611(2)(A). Brennan began work on June 14, 2006, thus her 12-month employment date was June 14, 2007. Brennan was not covered under the FMLA for the first three absences cited by Qwest, and does not argue otherwise. Brennan also appears to concede that her December 17, 2007 absence was not covered under the FMLA.

Regarding the timing of an FMLA request, when the need for leave is not foreseeable, an employee must notify her employer "as soon as practicable under the facts and circumstances of a particular case." 29 C.F.R. § 825.303(a); *Bachelder*, 259 F.3d at 1130. This means "as soon as both possible and practical, taking into account all of the

**MEMORANDUM DECISION AND ORDER - 14**

facts and circumstances in the individual case." 29 C.F.R. § 825.303(b).

According to her deposition testimony, Brennan's July 23, 2007 absence was due to Brennan being assaulted. (Brennan Dep. at 135, Dkt. 29-4 at 35.) Qwest asserts, and Brennan does not dispute, that Qwest only learned of the reason for Brennan's July 23, 2007 absence as a result of this litigation. Brennan's July 23, 2007 absence was not foreseeable. However, the Court finds that Brennan did not notify Qwest as soon as practicable where such notice was given not given until after Brennan filed this lawsuit. The Court therefore finds that Qwest appropriately deemed the July 23, 2007 absence as unexcused and outside of FMLA coverage.

On October 23, 2007, during a meeting about Brennan's attendance performance, Brennan informed her supervisor, Jessica Davis, that her October 19, 2007 absence was due to her TBI. (Davis Dec., Dkt. 29-8, ¶ 33.) In that meeting, Davis referred Brennan to Qwest Disability Services (QDS), and advised Brennan that she may be eligible for FMLA leave. (Id.) Brennan was again absent from work on October 25, 2007. (Id., ¶ 34.) Davis met with Brennan again on November 6, 2007, and issued her "two Warnings of Dismissal relating to her unsatisfactory attendance performance." (Id., ¶ 35.) Six days later, on November 12, 2007, Brennan submitted a request for FMLA leave. (Exhibit 5 to Davis Dep., Dkt. 35-6 at 16.)

The notice to the employer must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). "Calling in 'sick' without providing more information will not be

**MEMORANDUM DECISION AND ORDER - 15**

considered sufficient notice to trigger an employer's obligations under the Act." *Id.* However, the employer has some responsibility to obtain information necessary to determine FMLA eligibility. *Id.* Where the employee's absence is unforeseen, she must comply with the employer's usual and customary notice requirements for requesting leave. 29 C.F.R. § 825.303(c).

Qwest cites to cases from the Seventh Circuit that place the burden on plaintiff to timely and adequately request FMLA leave. *See Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 310-11 (7th Cir. 2006); *de la Rama v. Illinois Dep't of Human Serv.*, 541 F.3d 681, 687 (7th Cir. 2008). Qwest also argues that the timing of Brennan's request for FMLA leave for the October 2007 absences was not "as soon as practicable," and thus those absences are not covered under the FMLA. Brennan disagrees.

Neither party has offered definitive case law on this issue. There is no bright line formula for determining whether an employee's request is timely or adequate. Rather, the finding must be made on consideration of the facts and circumstances of each individual case. Whether or not Brennan's request for FMLA was timely or adequate presents a genuine issue of material fact for a jury. Accordingly, the Court is unable to determine, as a matter of law, that Brennan's termination was based solely on absences that were unprotected by the FMLA. Summary judgment on Brennan's FMLA claim will thus be denied.

3.     **Implied Covenant of Good Faith and Fair Dealing Claim**

Regarding employment contracts in Idaho, "any action by either party which

violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant of good faith and fair dealing." *Metcalf v. Intermountain Gas Co.*, 778 P.2d 744, 750 (Idaho 1989). The moving party bears the burden of proving there are no genuine issues of material fact, so that summary judgment is appropriate. Here, Qwest argues that Brennan's claim under the covenant of good faith and fair dealing must fail because "Plaintiff cannot sustain a claim under the ADA or FMLA." (Defs.' Memorandum, Dkt. 29-1 at 16.) As discussed above, the Court here will deny Qwest's motion to dismiss Brennan's FMLA claim. Thus, absent other support for Qwest's motion, the Court will deny summary judgment as to Brennan's implied covenant of good faith and fair dealing claim.

4.  **Negligent Infliction of Emotional Distress**

To establish a claim for negligent infliction of emotional distress, a plaintiff must show: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) breach of that duty; (3) a causal connection between the conduct and the plaintiff's injury; and (4) actual loss or damage. *Brooks v. Logan*, 903 P.2d 73, 78 (Idaho 1995). Under FMLA, a damage award is limited to wages, salary, employment benefits, monetary losses sustained as a direct result of the violation, the interest on such amounts, and an additional amount as liquidated damages equal to the sums thereto. 29 U.S.C. § 2617(a)(1)(A). There is no provision for non-economic or emotional-distress damages under FMLA. *See Daoud v. Avamere Staffing, LLC*, 336 F.Supp.2d 1129, 1141 (D. Or. 2004).

**MEMORANDUM DECISION AND ORDER - 17**

As discussed above, the Court here will grant summary judgment as to Brennan's ADA claim. There being no provision for emotional distress damages under FMLA, summary judgment as to Brennan's negligent infliction of emotional distress claim will also be granted.

**ORDER**

**IT IS HEREBY ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (Dkt. 29) is GRANTED as to Plaintiff's Americans with Disabilities Act claim, and Negligent Infliction of Emotional Distress claim.

2. Defendant's Motion (Dkt. 29) is DENIED as to Plaintiff's Family Medical Leave Act claim and Implied Covenant of Good Faith and Fair Dealing claim.

DATED: **October 10, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge